[L. A. No. 2069. In Bank.—August 17, 1908.]

HARRIET W. R. STRONG et al., Respondents, v. E. J. BALDWIN, Defendant, Cross-Complainant, and Appellant, and H. A. UNRUH, Defendant and Appellant.

RIPARIAN PROPRIETORS—LAND NOT ABUTTING ON STREAM—CONVEYANCE OF RIPARIAN RIGHT.—When a tract of land abuts on a stream and a portion thereof not contiguous to the stream is conveyed by the owner, the riparian right of the portion so conveyed in the stream may also be conveyed with the land, and when so conveyed is still a riparian right with all the attributes of such right, and is in strict technical language "parcel of the land" conveyed. The same is necessarily true where a tract of land abutting on a stream is partitioned in court proceedings among the owners thereof, and appropriate provision for riparian rights is made in the decree as to the portions allotted by the decree which do not abut on the stream.

ID.—DESCRIPTION OF RIPARIAN RIGHTS.—A deed by the original owner of the riparian land conveying a portion thereof not contiguous to the stream, together with "the same rights to the use of water that appertained to said land" in the hands of the grantor, and a deed conveying such land, "together with the water-rights and privileges as pertaining to the settlement" of the grantor, the quantity thereof being specified, are each sufficient to preserve to the grantee the riparian right of the land conveyed, and to make it a parcel thereof, and it passed as such in all subsequent conveyances of such land.

ID.—PARTITION OF RIPARIAN RIGHTS.—A decree of partition of riparian land which allotted with each parcel of land "all riparian rights and privileges," had the effect to make the riparian right a "parcel of the land" so severally allotted.

ID.—USE OF WATER DITCH — PRESCRIPTIVE TITLE — EVIDENCE. — In an action to enjoin the defendants from interfering with the plaintiffs in their use and control of a water ditch crossing lands of one of the defendants, the evidence is reviewed and held sufficient to sustain the findings as to the adverse use of the ditch to the extent of its capacity by plaintiffs, cross-defendants, their co-owners and predecessors in title, for a period of time sufficient to give them title thereto for such purpose by prescription, prior to the time at which the defendant had acquired the land.

ID.—ADVERSE POSSESSION—PAYMENT OF TAXES.—A title by prescription which had become perfect prior to the amendment in 1878 of section 325 of the Code of Civil Procedure, making the payment of taxes an element of adverse possession, is not defeated by reason of the non-payment of taxes by the adverse users.

ID.—ACCEPTANCE OF LEASE BY OWNER IN POSSESSION OF LAND — ESTOPPEL.—An owner of real property who accepts a lease thereof from another claimant, while he himself is in possession, and who has not at any time received the possession from the lessor, is not estopped by the lease from asserting his title as against such lessor.

ID.—ACCEPTANCE OF LEASE OF DITCH BY OWNER OF EASEMENT.—The owner of a right originally acquired by prescription to the use of a water ditch across the land of another, and who remains in the continuous exercise and possession of such use, is not estopped, by the mere fact that he has accepted a lease of the ditch from the owner of the land, from asserting his prescriptive title to the use of the ditch against the owner of the land.

ID.—USE OF DITCH ONLY DURING IRRIGATING SEASON.—The continuity of the possession of a water ditch is not broken by reason of the fact that the ditch was in fact used for conveying water only during the portion of each season when the water was needed for irrigation purposes.

ID.—EFFECT OF TITLE BY PRESCRIPTION.—A title acquired by prescription is as effectual and complete as one obtained by a conveyance, and unless extinguished by virtue of some special statutory provision continues until conveyed by the possessor or lost by another adverse possession for the required time.

ID.—FINDINGS—RELATIVE RIGHTS TO WATERS OF STREAM AS BETWEEN RIPARIAN OWNERS.—In an action by alleged riparian owners against other such owners to enjoin the latter from interfering with the plaintiffs in the diversion of the waters of the stream by means of a particular ditch, in which the evidence introduced at the trial was not sufficient to enable the court to intelligently determine the relative rights of the parties before the court as riparian owners in the waters of the stream, it is proper for the court to determine that

all the parties were riparian owners, and to make its decree accordingly, and to leave the question of the proportions of the water to which each is entitled to future determination.

APPEAL from a judgment of the superior court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Works, Lee & Works, for Appellants.

C. L. Batcheller, J. S. Chapman, and Ward Chapman, for Respondents.

ANGELLOTTI, J.—This action was instituted by Harriet W. R. Strong and Julius B. Cohn, the owners of certain parcels of land in the Rancho Paso de Bartolo Viejo, sometimes known and hereinafter designated as the Ranchito, in Los Angeles County, against E. J. Baldwin and H. A. Unruh (who is simply an agent of said Baldwin and has no other interest in the subject-matter of the litigation), to obtain a decree enjoining them from interfering with plaintiffs in their use and control of a certain water ditch known as the Rincon ditch, connecting with the San Gabriel River at a point on the Rancho la Puente, which is owned by Baldwin, and extending for a distance of about a mile on said Rancho la Puente to and into said Ranchito, and used by various property owners in said Ranchito for obtaining water for irrigation and domestic purposes, and also enjoining them from interfering with plaintiffs in the diversion of the waters of said river by means of said ditch.

The theory of the complaint was that the plaintiffs and other owners of property in said Ranchito and their predecessors in title had acquired by prescription the ownership of said ditch for the purpose of diverting to their lands for irrigation purposes waters of the San Gabriel River to the full capacity of the ditch, alleged to be six hundred inches of water measured under a four-inch pressure, and the right to divert that amount of water by means of the ditch. Defendants by their answer denied the alleged ownership of plain-

tiffs and other owners of property in the Ranchito in either ditch or water, alleging Baldwin to be the sole owner thereof and that any use by them of such water was had solely by and with his consent and for an annual rental. Baldwin also filed a cross-complaint against plaintiffs and other persons, hereinafter called cross-defendants. In this he alleged his ownership of the Puente Rancho and other tracts, that the same border upon and are riparian to the San Gabriel River, and that all of the waters of said river are needed for the proper irrigation of his said land and for domestic purposes, that he is the owner of the Rincon ditch so far as the same is on the Puente Rancho, that the plaintiffs and cross-defendants, owners or claimants of real estate near the San Gabriel River but not riparian thereto, claim to be owners of said ditch and the waters diverted thereby, but have no interest therein, and that their claim is wholly without right. He asked that they be required to show by what right they claimed any such interest, and that it be decreed that he is the owner of said ditch and all the waters therein. The plaintiffs and cross-defendants answered this cross-complaint, denying that all of said water was necessary for the irrigation of his lands, and also denying Baldwin's allegations as to the ownership of said ditch and water, admitting that some of them were not owners of land riparian to the stream, but alleging that others of them were owners of such land, without stating which of them owned riparian land and which non-riparian land, and alleging that they were the owners by prescription of said ditch with a right to divert and carry through the same to their lands for purposes of irrigation the waters of the San Gabriel River, to the full capacity of the ditch.

Upon a trial of the issues thus made, the superior court found that the ditch was constructed by the predecessor in title of plaintiffs and cross-defendants more than forty years before the filing of the cross-complaint, and that ever since its construction it had been adversely used by them and their predecessors in title to the extent of its capacity, found to be sufficient to deliver upon their lands four hundred inches of water measured under a four-inch pressure constant flow, for the purpose of diverting to their lands for irrigation purposes the waters of said river, and that they were the owners

by prescription of said ditch and the right to divert there-through, for irrigation and domestic purposes, the waters of said river to the extent aforesaid. Judgment was given accordingly. Upon an appeal to this court by defendants and the cross-complainant, this judgment and an order denying a new trial were reversed. It was held upon the evidence then before the court that unless there was sufficient evidence to support a conclusion that the enjoyment of the easement had ripened into a title thereto by prescription prior to the year 1882, when Baldwin had become the owner of the Puente Rancho, the conclusion of the trial court could not be upheld. Passing the question whether the evidence was sufficient to sustain a conclusion that the ditch had been used prior to 1882 for a length of time sufficient to create a prescriptive right to its use, this court held that the evidence did not sustain a finding that it had been so used, "to an extent sufficient to deliver upon the lands of the respondents four hundred inches of water measured under a four-inch pressure constant flow." For this reason, the judgment and order were reversed. (See *Strong* v. *Baldwin*, 137 Cal. 432, [70 Pac. 288].) In view of the disposition of the case on the trial, the question of riparian rights on the part of respondents was not discussed by this court further than to point out, in speaking of a demurrer interposed by Baldwin to the answers to the cross-complaint on the grounds of uncertainty and ambiguity, that a pleading which simply denied that "all of the said parties defendant . . . are owners of tracts of land not riparian to the said stream," and alleged that "many of the said parties are the owners of land through which the said stream flows" was uncertain, in not alleging which of said defendants are the owners of riparian land or the quantity of water required for any of their lands as such riparian owners, and that Baldwin was entitled to have their claims in this regard specifically stated.

Upon the going down of the *remittitur*, the plaintiffs and cross-defendants filed amended answers to such cross-complaint, for the purpose of conforming to this suggestion of this court. In these answers, in addition to the former allegations, the land of each was specifically described, and it was alleged that each was the owner of land riparian to the stream and entitled to riparian rights, whether their tracts actually

bordered upon the stream or not, by reason of the fact further alleged that all such land was a part of the original Ranchito through the entire length of which the river has always flowed, and that in the segregation of said rancho, the riparian rights of said rancho were apportioned among the various tracts of land. They further averred that the waters of said river to the full extent of the capacity of the ditch were necessary for the irrigation of their lands and other lands in said Ranchito having such riparian rights, the owners of which had not been made parties.

On the second trial the trial court found in accord with these allegations of the amended answers. The specific facts found as to the riparian rights were that the whole Ranchito was riparian to San Gabriel River, that the same was the property of Pio Pico under grant from the Mexican government, that said Pico first conveyed divers tracts of said land to divers parties and in making said conveyances also conveyed with the lands proportional interests in the waters of the river belonging to said Ranchito, that he then sold all the unsold portion of the Ranchito consisting of 3785 acres shown by the evidence to be riparian to said river, to one B. Cohn, who acquired the same in trust for himself and defendants Broderick and Prager, and that said 3785-acre tract was subsequently partitioned among the owners thereof in an action brought for that purpose, the decree in such action allotting, as the evidence shows, with each parcel of land "all riparian rights and privileges." The plaintiffs and cross-defendants were found to be the successors in title under said Pico. It was further found that the ditch was capable of carrying four hundred and fifty inches of water measured under a four-inch pressure, and had been adversely used by plaintiffs and cross-defendants and their successors under said deeds of Pico, and their predecessors in title, to the extent of its capacity, for the diversion of the waters of said river for the irrigation of their lands and domestic purposes, for the period of time sufficient to give them title by prescription to such ditch, with the right to take such amount of water therein for such purpose. With respect to the right of the use of the waters of the river as distinguished from the ditch itself, the court found that the use by respondents was not adverse to Baldwin, that all the parties to the action have rights to the

use of the waters of San Gabriel River as riparian owners, but that the evidence before the court was not sufficient to enable the court to make findings as to the relative rights of the plaintiffs and cross-defendants, on the one hand, and of Baldwin on the other. The conclusion of the trial court, as shown by the judgment, was that plaintiffs and the cross-defendants are the owners of said ditch over the land of Baldwin, with the right as riparian owners to divert the waters of the river by means thereof to the extent of four hundred and fifty inches measured under a four-inch pressure, and to conduct the same through said ditch to their lands and the lands of their co-owners in said ditch, for irrigation and domestic purposes, subject to the limitation that the right to the use of the waters to such extent is not to be construed as a prior or paramount right to the waters of said river, or a prior or paramount right to take the same at the point of diversion "except when such amount is not in excess of the rights of the owners of said Rincon ditch as riparian proprietors in the waters of the river." It was further expressly adjudged that all the parties, including Baldwin, are riparian owners on said river, and as such entitled to divert waters therefrom for use on their lands, "but nothing herein contained shall be construed as adjudging or determining the quantity to which either of them is entitled, or the proportion of such water which either is entitled to divert or use as against the others."

This is an appeal by defendants from the judgment thus given and from an order denying their motion for a new trial.

1. With respect to the question of riparian rights on the part of plaintiffs and cross-defendants, the findings of the trial court that all of such parties have riparian rights in the waters of the San Gabriel River are attacked as not being supported by the evidence. As we have seen, the land of some of these parties does not border upon the stream, but it does not necessarily follow that such land is without such riparian rights. When a tract of land abuts on a stream and a portion thereof not contiguous to the stream is conveyed by the owner, the riparian right of the portion so conveyed in the stream may also be conveyed with the land, as is fully recognized in the case cited by learned counsel for appellants (*Anaheim etc. Co.* v. *Fuller*, 150 Cal. 331, [88 Pac. 978]), and when so con-

veyed is still a riparian right with all the attributes of such
right, and is in strict technical language "parcel of the land"
conveyed. The same is necessarily true where a tract of land
abutting on a stream is partitioned in court proceedings
among the owners thereof, and appropriate provision for
riparian rights is made in the decree as to the portions allotted
by the decree which do not abut on the stream. (See *Rose* v.
*Mesmer*, 142 Cal. 322, [75 Pac. 905]; *Verdugo etc. Co.* v.
*Verdugo,* 152 Cal. 655, [93 Pac. 1021].) This is not a case,
as suggested by appellants, of attempting to make riparian
lands which are not in fact riparian, but is simply the preser-
vation of the right which the land has at the time of the con-
veyance or decree. In the case at bar, the land of some of
these plaintiffs and cross-defendants abuts on the stream, and
as to such land there is, of course, no question. As to the land
of the others, we think it sufficiently appears that the riparian
rights were preserved. It is clear upon the record that at
least a portion of each of such parcels has always been depend-
ent for irrigation on the waters of said river, and has always
been irrigated by means of said waters. All the original deeds
of conveyance made by Pico for portions of the Ranchito
which do not abut on the river contained either one or the
other of two provisions regarding water. For instance, the
deed of Pico to William R. Standifer and A. H. Dunlap,
made May 13, 1875, purported to convey with the land "the
same rights to the use of water that appertained to said land
in the hands of the party of the first part," and the deed from
Pico to plaintiff Harriet W. R. Strong, dated October 18,
1867, conveyed three hundred and twenty acres of land "to-
gether with the water-rights and privileges as pertaining to
the settlement of Pico, to wit: Sixteen water shares, repre-
senting the privileges to water for sixteen times twenty acres,
paying for the same as water used in said settlement." In the
light of the fact that these lands were then dependent for
water on this river, there cannot reasonably be any doubt that
it was the intention of each of these provisions to preserve
the riparian right of the land conveyed. The effect of such
provision in the Pico deeds was, therefore, in each case to
make the riparian right "parcel of the land" conveyed, and it
passed as such in all subsequent conveyances of such land.
As we have seen, the 3785-acre tract conveyed by Pico to

B. Cohn and held by him in trust for himself, Broderick, and Prager, abutted on the river, and, therefore, no special provision was necessary to carry the riparian right. So far as we have been able to ascertain from the records, no specific portion of this tract had been segregated by conveyance at the time of the partition decree. As already stated, that decree allotted with each parcel of land "all riparian rights and privileges," thus making the same "parcel of the land," as in the case of the conveyances from Pico. All of the plaintiffs and cross-defendants whose. land does not abut on the river hold either under such deeds from Pico or under the partition decree. From what we have said, it follows that they are all riparian owners as to the San Gabriel River, even though their land does not abut thereon.

2. The findings as to the adverse use of the ditch to the extent of its capacity by plaintiffs, cross-defendants, their co-owners, and their predecessors in title, for a period of time sufficient to give them title thereto for such purpose by prescription, are also assailed on the ground of insufficiency of evidence to support them. It may be assumed that these findings can be sustained only on the theory that the enjoyment of the easement had ripened into a title by prescription prior to the year 1882. As to the ditch itself, there can be no doubt that there was sufficient evidence to sustain such a conclusion. There was substantial evidence that it was constructed as early as the year 1855, and had ever since been used for the purpose of conducting water from the point of diversion to the Ranchito, then occupied by Pico and his tenants, for the irrigation of the lands thereof. The trial court found it was in fact constructed by Pico, and while there is no direct evidence to this effect, it is fairly inferable from the location of the ditch and the purpose to which it was devoted that it was so constructed. From that time until the year 1882 the use thereof by Pico and his tenants and successors was continuous, open, and notorious, with the full knowledge of the owners of the Puente Rancho, at least from the year 1861. Those interested in the Ranchito during all this time apparently claimed and treated the ditch as their own property, and there is nothing to indicate that any consent to such use on the part of the owners of the Puente Rancho was ever obtained or sought. But it is specially urged that there was no

foundation in the evidence for the conclusion that a prescriptive right to conduct through said ditch four hundred and fifty inches of water measured under a four-inch pressure existed in the year 1882, shortly after Baldwin acquired the Puente Rancho. This, it will be remembered, was the matter by reason of which the former judgment was reversed, the superior court then finding an adverse use to an extent sufficient to deliver four hundred and fifty inches of water on the Ranchito. Upon the second trial, additional evidence on this matter was presented. Frederick Lambourne, who was on the Puente Rancho as private tutor and manager of the ranch for fourteen years, from 1861 to 1875, and who was very familiar with the ditch, had examined it after the first trial, and testified that it was the same ditch virtually, and that he could not tell that there was any difference in the size. Mr. Rowan, a civil engineer, testified that he measured the waters therein, on the Ranchito, on October 25, 1903, and found flowing therein 149½ inches, and that the ditch was not more than one third full. Mr. A. H. Dunlap testified that he knew the ditch from 1873, and that the water had been conducted through it to the extent of six hundred inches from 1873 down, when the water was in the river to get; that in the early spring the ditch was full of water usually, and had six hundred inches of water or over, diminishing as the year advanced; that there had been no general enlargement of the ditch since 1873; that it is just about the same now as when he first knew it. Mrs. Strong testified that the ditch is not quite as large now as it was in the early seventies. In addition to this, all the testimony given on the first trial was read in evidence on the second trial, and this showed from four hundred to five hundred inches running in the ditch in 1896 and 1897. There was in all this sufficient support for a conclusion that the ditch had been continuously used by the occupants of the Ranchito during the portions of each year when irrigation was required and the water to be had, up to the year 1882, in conducting water to the extent of its capacity. The findings upon this branch of the case were, therefore, not contrary to the evidence. There is nothing in the opinion on the former appeal as we read it, that precludes us from so holding.

It appears that this ditch has never been assessed separately from the land, but that the Puente Rancho was always assessed

wholly to Baldwin and that he paid the taxes thereon. It is urged, in view of these circumstances, that under section 325 of the Code of Civil Procedure title by prescription could not have been acquired by plaintiffs and cross-defendants. A sufficient answer to this claim is that their title by prescription was complete prior to the amendment of section 325 of the Code of Civil Procedure making the payment of taxes an element of adverse possession, which amendment was enacted in 1878, and that such amendment therefore has no application. (*Lucas* v. *Provines,* 130 Cal. 270, [62 Pac. 509].)

From what has been said, it appears that respondent must be held to have had a perfect title by prescription in the year 1882, which was one or two years after Baldwin acquired the Puente Rancho.

It is contended, however, that even if such title was so acquired by plaintiffs and cross-defendants, it has been lost by non-use or abandonment, and also that Baldwin has regained it by adverse user of more than five years. It is admitted that there never has been any cessation in the use by respondents of either ditch or water. To the extent of the use had prior to 1882 and for all the purposes of said use they have been in possession of the ditch ever since 1882, conducting water therein for the purpose of irrigating their lands, and using the same for such irrigation. The claim of abandonment and non-use on the part of the respondents, as well as the claim that Baldwin has regained the title by adverse possession, is based on the fact that from the year 1882 Baldwin claimed to be the owner of this ditch, and that from the year 1882 to the year 1895 so-called leases of the right to carry water through this ditch were executed by him, one signed by persons using water for irrigation on the Ranchito, and others by persons purporting to represent the owners of the land irrigated from said ditch. The first of these leases, that of 1882, was signed by T. F. Borley and W. T. O'Brien, who, so far as appears, were in no way connected with any of the parties to this action, and was for a mere nominal rent. From 1884 to 1889 such leases were executed to and signed by persons purporting to act as water commissioners of the Rincon Ranchito district for a mere nominal rental, and for the years 1893, 1894, and 1895, all within five years of the commencement of this action and the filing of the answers to the cross-

complaint, they were executed to the Strong Irrigation district, a public corporation organized in 1893 under the laws of this state for the irrigation of the lands supplied by the Rincon ditch, for the specific rental of $700, $500, and $675. No conveyance of their rights in either ditch or water was ever made to such irrigation district by any of the property-owners, but the district, through its officers and for the property-owners, for several years managed and controlled the ditch and distributed the waters to the property-owners. Leases for the other years between 1882 and 1895 were not introduced in evidence. In the year 1896, the respondents refused to pay further for the privileges, and, Baldwin interfering with their enjoyment of the ditch, this action was commenced.

It is apparent, we think, that there was in all of this no extinguishment of the right of respondents by reason of any of the provisions of section 811 of the Civil Code. So far as relied on by appellants, that section is as follows: "A servitude is extinguished: . . . 3. By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise; or, 4. When the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment." Manifestly, subdivision 3 has no application whatever, and the disuse mentioned in subdivision 4 means simply the failure to use the thing itself theretofore used. There has been, as we have seen, no cessation whatever in the use by respondents of this ditch. We must, therefore, look elsewhere for a basis for the conclusion that by reason of these leases they have lost their title acquired by prescription. These instruments could not, of course, operate as a transfer of such title to Baldwin, and can be effectual only as admissions against claim of title and by way of estoppel. It is established in this state, however, that the owner of real property who accepts a lease thereof from another claimant, while he himself is in possession, and who has not at any time received the possession from the lessor, is not estopped by the lease from asserting his title as against such lessor (*Pacific Mutual etc. Co.* v. *Stroup*, 63 Cal. 150; *Baldwin* v. *Temple*, 101 Cal. 396, [35 Pac. 1008] ; see, also, 3 Wood on Limitations, note p. 614), and this rule has

CLIV Cal.—11

been applied in the case of water-rights. (See *Oneta* v. *Restano,* 89 Cal. 63, [26 Pac. 788], and cases there cited.) As before stated, it cannot be held that there ever was any change in the possession of this ditch. It was always used exclusively to convey water to the Ranchito, to be used thereon for irrigation purposes, and for that purpose was always in the possession of respondents and their predecessors, either personally or through their agents, the water commissioners and the irrigation district. The continuity of the possession was not broken by reason of the fact that the ditch was in fact used for conveying water only during the portion of each season when the water was needed for irrigation purposes. (See *Hesperia etc. Co.* v. *Rogers,* 83 Cal. 10, [17 Am. St. Rep. 209, 23 Pac. 196].) The decisions cited above are, therefore, applicable. As admissions against any then claim of title, the effect of the leases might be to prevent the acquirement of a title by prescription, but such admissions could not operate to divest a title already acquired. A title so acquired is as effectual and complete as one obtained by a conveyance, and unless extinguished by virtue of some special statutory provision such as section 811 of the Civil Code, continues until conveyed by the possessor or lost by another adverse possession for the required time. (*Cannon* v. *Stockmon,* 36 Cal. 535, [95 Am. Dec. 205], and cases there cited. See, also, *School District etc.* v. *Benson,* 31 Me. 381, 52 Am. Dec. 618.) In view of what must be held to have been a continuous actual possession of the ditch by respondents for the purpose stated, we do not see how Baldwin can be held to have regained the title by adverse possession. Respondents were the absolute owners, and in possession of the property at the time of the execution of all these leases, and never entered into possession under Baldwin, and their possession was not, under the circumstances here existing, his possession.

3. Complaint is made of the failure of the court to find and decree the quantity of water the respective parties were entitled to use as riparian owners and especially its failure to make findings as to the relative rights in such matter of the plaintiffs and cross-defendants on the one hand, and of Baldwin on the other. The case is manifestly one where the pleading of the party complaining was not presented for the purpose of obtaining an apportionment of certain waters among the

riparian owners. It was not drawn on any such theory, and does not recognize the cross-defendants as riparian owners at all. The real object was to obtain a decree declaring the other parties to be without any right whatever in such waters. It may be conceded that the allegations of the pleadings were broad enough to have permitted the determination of this matter if sufficient evidence had been presented thereon. The court was not compelled, however, to determine this question in the absence of evidence sufficient to enable it to do so. It was stipulated on the trial that, as alleged in the answers to the cross-complaint, there were as many as nine persons not parties to the action who owned land in the Ranchito bordering on the river. The extent of the riparian rights of the parties to this action could not be determined without taking into consideration the rights of these other riparian proprietors, as to which there was no evidence whatever, and concerning which there could, of course, be no binding determination in the absence of such owners. But even if there were no such other owners, our examination of the record has satisfied us that the evidence introduced was not sufficient to enable the court to intelligently determine the relative rights of Baldwin on the one hand, and those of the remaining parties on the other, in the waters of this river. Under such circumstances, the trial court did all that it properly could do, by determining that the various parties were riparian owners and leaving the question of the proportions of the water to which each is entitled to be determined in the future. (See *Bathgate* v. *Irvine*, 126 Cal. 135, [77 Am. St. Rep. 158, 58 Pac. 442]; *Coleman* v. *Le Franc*, 137 Cal. 214, [69 Pac. 1011].)

4. The trial court overruled demurrers interposed by Baldwin to the amended answers to his cross-complaint on the ground of uncertainty. In view of the disposition of the case by the trial court, it is apparent that it is now immaterial whether the allegations of these answers were sufficiently certain as to the *extent* of the riparian rights of the plaintiffs and cross-defendants in the waters of the river. The findings and judgment do not purport to define the extent of such right as to any part in the action. It was also urged that such answers were uncertain in not showing whether the pleaders claimed to be the owners or entitled to the waters of San Gabriel River as riparian owners or by adverse use. The

answers clearly set forth the facts constituting the basis of
the claim of the parties to these waters, which was all that
was necessary. According to these allegations they were all
riparian owners, entitled as such to divert from the river water
to the extent of the capacity of the Rincon ditch, and had been
ever since the construction of said ditch so diverting and
using such water openly, notoriously, continuously, and under
claim of right as against the world. There was no element of
uncertainty as to the nature of the claim alleged.

5. Complaint is made that the finding that the Rancho
Santa Anita, one of Baldwin's ranches, is not riparian to either
the old or the new San Gabriel River is not sustained by the
evidence. This finding is important only in so far as it may
bar Baldwin, in any future proceeding to determine the extent
of the rights of the parties in the waters of the San Gabriel
River, from making any claim on account of this ranch. As
we understand the evidence given upon this matter, the Santa
Anita Ranch borders only on the Santa Anita Creek by which
it is traversed, and which, after running through said ranch,
runs over a portion of the San Francisquito Ranch. At times
of unusually high water or floods, some of the surface water
runs into San Gabriel River above the point of diversion by
the Rincon ditch, but ordinarily this is not the case. All of
the water of the Santa Anita Creek available for irrigation
purposes is used on the Santa Anita and San Francisquito
ranches, and there can be no question as to the rights of the
owners thereof to use so much of said water as may be neces-
sary for the irrigation of the lands through which it flows.
It could not have been the intention of the trial court to hold
otherwise, and we are satisfied that the finding on this ques-
tion must be construed as not foreclosing the riparian right of
the owner of the Sánta Anita Ranch in the waters of the Santa
Anita Creek.

The evidence fully sustains the finding that the plaintiffs
and cross-defendants never conveyed or transferred any of
their rights in either ditch or water to the Strong Irrigation
district. So far as that corporation controlled and managed
the property, it acted merely as the agent of the owners, and
had no interest in the property here involved.

In view of our conclusions upon the matters already dis-
cussed, other findings attacked by appellants are immaterial,

and there is no other matter discussed by learned counsel that requires attention.

The judgment and order denying a new trial are affirmed.

Sloss, J., Lorigan, J., Shaw, J., and Henshaw, J., concurred.