[Sac. No. 2685.   In Bank.—February 8, 1919.]

MILLER & LUX INCORPORATED (a Corporation), Appellant, v. J. G. JAMES COMPANY (a Corporation), et al., Respondents.

WATER AND WATER RIGHTS — CONVEYANCE OF PORTION OF RIPARIAN LANDS—PRESERVATION OF RIPARIAN RIGHTS.—Riparian rights of lands bordering a stream can be preserved, as between the parties, in parcels of the land which do not border upon the stream when, by the conveyance, they are severed from the original riparian tract.

ID.—RIGHTS OF OTHER RIPARIAN OWNERS.—The owner of the larger riparian tract has the right to convey part of the riparian right to his grantee, and such grantee, although the lands granted have no contact with the stream, may take water thereto under the common law of riparian rights, by virtue of the stipulation in the transfer from the owner of the riparian tract of which it was formerly a part, as against a lower claimant upon the natural stream, who had no part in the stipulation and who is a stranger to the transaction.

ID.—NATURE OF RIGHT.—The right to the flow of water is inseparably annexed to the soil, and passes with it, not as an easement or appurtenant, but as a parcel.   Use does not create, and disuse cannot destroy or suspend it.

APPEAL from a judgment of the Superior Court of Merced County.   E. N. Rector, Judge.   Affirmed.

CLXXIX Cal.—44

The facts are stated in the opinion of the court.

Short & Sutherland, Edward F. Treadwell, and Samuel C. Wiel, for Appellant.

James M. O'Brien, for Respondents.

WILBUR, J.—The plaintiff, owner of land riparian to the San Joaquin River below the lands of the defendants, seeks to enjoin them from the use of water upon their lands. It is admitted that the lands of all the defendants were originally portions of a large tract of riparian land belonging to the defendant J. G. James Company. It is conceded that at the time of the conveyance by said J. G. James Company of said several parcels of land the grantor and grantee, by stipulation in their conveyances, intended that the purchaser should become entitled to the use of water "to the same extent as though the ownership of said land had at all times continued in said J. G. James Company." It is also conceded that the rule is correctly stated in *Copeland* v. *Fairview etc. Co.*, 165 Cal. 148–161, [131 Pac. 124], "That such riparian right can be thus preserved in parcels which do not border upon the stream when, by the conveyance, they are severed from the original riparian tract, is fully settled by the decisions in this state." It was, however, also stated in that case: "How far such an apportionment or transfer is good against owners of other riparian lands upon the same stream, not part of the tract from which such parcels are conveyed, we need not consider, since none of such other owners are parties to or concerned in this suit." (*Copeland* v. *Fairview etc. Co., supra.*) The appellant states: "There is no doubt that the detached tracts may take water as against all privies to the transaction, and that has been decided and settled. The case presents for the first time, however, the question of the relation of the owners of the detached areas to outstanding claimants upon the natural stream, without privity to the transaction. . . . " The appellant asks: Can the owner of distant land, having no contact with the stream, "take water thereto under the common law of riparian rights, by virtue of the stipulation in the transfer from the owner of the riparian tract of which it was formerly a part, as against a lower claimant upon the natural stream, who had no part in the stipulation and who is a stranger to

the transaction?''   As conceded, the right of the owner of the
larger riparian tract to convey part of the riparian right to
his grantee is fully recognized by the decisions of this court
(See *Copeland* v. *Fairview etc. Co., supra,* and cases therein
cited.)   In *Strong* v. *Baldwin,* 154 Cal. 150–156, [129 Am. St.
Rep. 149, 97 Pac. 178], it was said: ''When a tract of land
abuts on a stream and a portion thereof not contiguous to the
stream is conveyed by the owner, the riparian right of the
portion so conveyed in the stream may also be conveyed with
the land, as is fully recognized in the case cited by learned
counsel for appellants (*Anaheim Union Water Co.* v. *Fuller,*
150 Cal. 331, [11 L. R. A. (N. S.) 1062, 88 Pac. 978]), and
when so conveyed is still a riparian right with all the attri-
butes of such right, and is in strict technical language 'parcel
of the land' conveyed.   The same is necessarily true where a
tract of land abutting on a stream is partitioned in court pro-
ceedings among the owners thereof, and appropriate provision
for riparian rights is made in the decree as to the portions
allotted by the decree which do not abut on the stream.''   That
the riparian right is a part and parcel of the land is also
pointed out in the earlier cases: ''The right to the flow of
water *is inseparably annexed to the soil,* and passes with it,
not as an easement or appurtenant, *but as a parcel. Use*
does not create, and *disuse* cannot destroy or suspend it. . . .

''The right to the use of water flowing over land is un-
doubtedly *identified with the realty,* and is a real and corpo-
real hereditament.   (*Cary* v. *Daniels,* 5 Met. (Mass.) 238.)''
(*Lux* v. *Haggin,* 69 Cal. 255–391, [10 Pac. 674]); see, also,
*Rose* v. *Mesmer,* 142 Cal. 322, [75 Pac. 905]; *Verdugo Canyon
Water Co.* v. *Verdugo,* 152 Cal. 655, 663, [93 Pac. 1021, 1025],
where it is said: ''Its waters were therefore not merely appur-
tenant thereto, as a right acquired by prescription, or appro-
priation, would be, but were a part of the land itself, as parcel
thereof.''   If, then, there is attached to every portion of a
large tract of land a right to the use of the water of the
stream, so intimately connected with the land itself that it
can appropriately be called a parcel thereof, it being conceded
to be the settled law of this state that such right can be con-
veyed by the owner thereof to a grantee of the land as a part
and parcel thereof, there seems to be no good reason for hold-
ing that this grant is not effective as against lower riparian
lands and water users.   They have the same right that they

had before the transfer, neither more nor less. If the owner of riparian lands, by subdividing his land and selling parcels thereof not adjacent to the stream, by the act of severance of the land, deprives it of the very riparian right which the conveyance purports to grant as against lower riparian owners so that they can compel the water which might otherwise be used upon that land so severed to flow past the land so conveyed to the lands of lower riparian owners, the effect of the conveyance by the riparian owner is not to vest title in his grantee, but in lower riparian owners or water users. It is fundamental that a man can transfer property which he owns, and that such transfer is good against the whole world. There seems to be no reason why this rule, under our authorities, should not apply here. It is true that it has been held that the upper riparian owner cannot sell the water for use upon lands not riparian, for this is not the exercise of a riparian right, and the purported transfer would not be a transfer of a riparian right. . (*Heilbron* v. *Fowler Switch Canal Co.*, 75 Cal. 432, [7 Am. St. Rep. 183, 17 Pac. 535]; *Heilbron* v. *Seventy-Six Land & Water Co.*, 80 Cal. 194, [22 Pac. 62].) The reasoning upon which this rule is based, however, has no application to the case in hand.

The previous decisions of this court, we think, have already determined this question against the contention of the appellant. The rule above quoted from *Strong* v. *Baldwin,* 154 Cal. 150, [129 Am. St. Rep. 149, 97 Pac. 178], was announced in an action brought by owners of certain parcels of land in the Rancho Paso de Bartolo Viejo against the owner of an upper riparian rancho known as the Rancho la Puente. It will be observed that the lower riparian owner could not gain the title by adverse possession as against the upper riparian owner. As there stated: "With respect to the right of the use of the water of the river as distinguished from the ditch itself, the court found that the use by respondents was not adverse to Baldwin (the owner of the upper riparian land), that all the parties to the action have rights to the use of the waters of San Gabriel River as riparian owners, but that the evidence before the court was not sufficient to enable the court to make findings as to the relative rights of the plaintiffs and cross-defendants, on the one hand, and of Baldwin on the other." The decision, then, expressly holds that the owners of land in the lower rancho were riparian owners as against an upper

riparian owner, even though not contiguous to the stream, and it was in that connection that the court said: "This is not a case, as suggested by appellants, of attempting to make riparian lands which are not in fact riparian, but is simply the preservation of the right which the land has at the time of the conveyance or decree. In the case at bar, the land of some of these plaintiffs and cross-defendants abuts on the stream, and as to such land there is, of course, no question. As to the land of the others, we think it sufficiently appears that the riparian rights were preserved. It is clear upon the record that at least a portion of each of such parcels has always been dependent for irrigation on the waters of said river, and has always been irrigated by means of said waters." It appears that the lower rancho had been partitioned and that the riparian rights were mentioned in the partition decree. In that regard the court stated: "As already stated, that decree allotted with each parcel of land 'all riparian rights and privileges,' thus making the same 'parcel of the land,' as in the case of the conveyances from Pico. All of the plaintiffs and cross-defendants whose land does not abut on the river hold either under such deeds from Pico or under the partition decree. From what we have said, it follows that they are all riparian owners as to the San Gabriel River, even though their land does not abut thereon." If the riparian character of the land was preserved by the agreement between the holder of the land and his grantees as against an upper riparian owner, the same would be true with reference to a lower riparian owner, as in the instant case. The same question was involved in *Arroyo Ditch & Water Co.* v. *Baldwin,* 155 Cal. 280, [100 Pac. 874], although reference to the transcript may be necessary to make that fact fully apparent. In that case the Arroyo Ditch & Water Company diverted all of the stream known as the Old San Gabriel River, sometimes called "Rio Hondo," at its dam below the land of the plaintiff. This stream was bordered above and below the dam on either side by large Mexican grants. Below the dam of the plaintiff were "47,320 acres of land within the ranchos Paso de Bartolo, Santa Gertrudes, Los Cerritos, San Antonio and San Pedro which require for irrigation all the water naturally flowing in the old San Gabriel River at the point designated as the Arroyo Ditch dam; that said acreage requires 6,760 inches of water under a four-inch pressure for its successful irrigation;

that appellant is the owner of 5,835.80 acres of land bordering on and within the watershed of said river included within the ranchos of Potrero Grande and La Merced; and that he also owns an undivided five-sixths interest in the Potrero Chico Rancho, containing 150 acres and riparian to the river." It was also found that the defendant Baldwin's land required 289 inches of water under a four-inch pressure for irrigation. The Arroyo Ditch & Water Company distributed the water diverted at its dam to lands within the boundaries of some of the riparian ranchos below said dam, and as against the owners of lands in the riparian ranchos below the dam who had not used water the plaintiff claims to have acquired a right by adverse possession. (See page 285 of 155 Cal., [100 Pac. 876], and map therein referred to.) The court, after stating these facts and referring to the map in question, said: "Plaintiff's incorporators having thus acquired such right, *or having riparian rights themselves,* it is immaterial to the defendant Baldwin, an upper riparian owner, whether the right was enforced by them separately or through a corporation representing them, either as their agent and trustee or as possessor of their former titles." (Italics ours.) The court held that "There was also evidence upon which the court's calculations with reference to the proportion of the water belonging to the different litigants were properly based." By reference to the transcript it appeared that the trial court divided the water, giving 6,760/7,049ths to the plaintiff, and 289/7,049ths to the defendant. In other words, divided the water between Baldwin, an upper riparian owner, and the plaintiff, in the proportion of the amount of water needed by the entire acreage below the dam if the same had been irrigated, to wit, 6,760 inches, and the water needed to irrigate the riparian land above the dam, to wit, 289 inches. It, therefore, resulted that in this litigation between the diverters of water below Baldwin's land and Baldwin, the upper riparian owner, the court considered all the acreage below the dam, and, therefore, necessarily considered the various parcels of land within those ranchos belonging to the distributees of water which did not abut upon the stream. For the reasons stated the question propounded by appellant must be answered in the affirmative.

Judgment affirmed.

Shaw, J., Sloss, J., Melvin, J., Lennon, J., and Angellotti, C. J., concurred.