## DIMAMBRO-NORTHEND ASSOCIATES v UNITED CONSTRUCTION, INC

Docket No. 83545. Submitted June 10, 1986, at Detroit. Decided September 8, 1986. Leave to appeal applied for.

The Southgate-Wyandotte Relief Drain's Drainage District awarded construction contracts to two contractors, DiMambro-Northend Associates and a joint venture comprised of United Construction, Inc., and Mancini Construction, Inc. The construction work involved some tunnel work by each contractor, and the work of each contractor was to be independent and separate from that of the other until such time as "activation" occurred, at which time the system would be completed. A fire occurred in the tunnel worked on by the United/Mancini joint venture and was determined to be caused by the negligence of United/Mancini. The fire caused physical damage to the tunnel and to property of United/Mancini only, but also caused a delay in the completion of the work of DiMambro-Northend Associates. United/Mancini requested and received from the drainage district an extension of time within which to complete its work, subject to an agreement that United/Mancini indemnify the district against any damage claim or any claim for additional compensation by other contractors due to the delay caused by the fire and the extension of time. DiMambro filed suit against United/Mancini in Wayne Circuit Court seeking "delay damages," including lost profits, increased labor costs, and overhead costs, and alleging that DiMambro had completed its work under its contract with the drainage district but could not connect up and end the project because of the fire and resultant delay. The complaint alleged liability under the theories of negligence, tortious interference with DiMambro's contractual relationship with the drainage district, and a theory that DiMambro was a third-party beneficiary to the contract between the drainage district and United/Mancini, which con-

REFERENCES

Am Jur 2d, Building and Construction Contracts §§ 30 *et seq.*

Am Jur 2d, Insurance §§ 269 *et seq.*

See the annotations in the Index to Annotations under Building and Construction Contracts and Work; Insurance and Insurance Companies.

tract United/Mancini breached. United/Mancini was insured by three different insurance companies: Hartford Insurance Company, which provided two types of coverage: comprehensive general liability coverage up to $100,000 and comprehensive contractual liability coverage with a different dollar limit; Canadian Universal Insurance Company, which wrote insurance above the Hartford limits to a limit of $500,000; and Admiral Insurance Company, which wrote insurance for the excess of the Canadian coverage. The insurance companies were impleaded as parties defendant. Subsequently DiMambro filed suit against the drainage district in Wayne Circuit Court alleging breach of contract. The drainage district filed a third-party complaint against United/Mancini on an indemnity theory, relying upon the earlier agreement of United/Mancini to indemnify the drainage district in return for an extension of time. United/Mancini then impleaded all three insurance carriers, claiming that one or all of them should defend and indemnify United/Mancini in this action. The two cases were consolidated for trial. The court, Richard C. Kaufman, J., determined that the fire was the result of United/Mancini's negligence and that recovery by DiMambro was warranted on the negligence theory, on the third-party beneficiary theory, and on the theory that the drainage district breached its contract. The court awarded money damages of $38,836.87 to DiMambro. United/Mancini filed a motion supplementary to judgment asking the court to decide which insurance carrier was responsible for paying the judgment awarded to DiMambro. The court ruled that Admiral Insurance Company had no obligation to pay the judgment, even though the general liability limits of the Hartford and Canadian policies had already been exceeded. United/Mancini appealed.

The Court of Appeals *held*:

1. The Admiral insurance policy covers the delay damages which United/Mancini became legally obligated to pay as a result of the fire.

2. On remand, the circuit court must determine whether an exclusion provision of Admiral's insurance policy should not have been used to bar the coverage of the loss of DiMambro's use of its trucks following the fire.

3. Hartford Insurance Company was improperly compelled to be a party in this appeal. Taxable costs are awarded in favor of Hartford against Admiral.

Reversed in part and remanded for further proceedings.

1. INSURANCE — JUDICIAL CONSTRUCTION.

A policy of insurance is a matter of agreement by the parties,

and where there is a dispute the courts will determine what the agreement was and enforce it accordingly.

2. INSURANCE — JUDICIAL CONSTRUCTION.
    The courts will accept the plain meaning of the written terms of an insurance policy as the agreement of the parties where the language is not ambiguous.

3. INSURANCE — JUDICIAL CONSTRUCTION.
    The courts will not rewrite an insurance policy to include a term to which the parties have not agreed.

*Lizza & Mulcahy, P.C.* (by *David M. Lawson* and *James H. Mulcahy*), for Admiral Insurance Company.

*Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C.* (by *Jeannette A. Paskin*), for Hartford Insurance Group.

*Edward M. Miller, P.C.* (by *Edward M. Miller*), for defendant.

Before: DANHOF, C.J., and CYNAR and J. M. BATZER,* JJ.

DANHOF, C.J. Defendants United Construction, Inc., and Mancini Construction, Inc., a joint venture (United/Mancini), appeal as of right from the November 5, 1985, opinion and order of the Wayne Circuit Court in this construction contract case.

We agree with United/Mancini that the circuit court erroneously interpreted the comprehensive general liability insurance policy between United/Mancini and its insurer, Admiral Insurance Company, third-party defendant. We reverse the opinion and order with respect to the circuit court's decision on the issue of insurance coverage provided by Admiral and remand for further proceedings consistent with this opinion.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

This case enjoys a lengthy procedural history, a description of which is necessary to an informed understanding of the legal issues.

This appeal arises out of the consolidation of two lawsuits filed in the circuit court as a result of construction contracts which the Southgate-Wyandotte Relief Drain's Drainage District (drainage board) awarded to two contractors for the construction of part of a sewer system. This construction involved some tunnel work. The drainage board awarded contract No. 3 to United/Mancini, and awarded contracts No. 5 and No. 7 to DiMambro-Northend Associates, the principal plaintiff in both lawsuits. The work of each contractor was to be independent and separate from that of the other contractors until such time as "activation" occurred, at which time the system would be completed.

On July 18, 1977, a fire occurred in the tunnel worked on by United/Mancini under contract No. 3. The circuit court ultimately found that the fire was a result of United/Mancini's negligence. The fire caused physical damage to the tunnel and to property of United/Mancini only. However, the fire caused a delay in the completion of work by DiMambro, the contractor responsible for the tunnel portion adjacent to that of United/Mancini.

After the fire, United/Mancini petitioned the drainage board for an extension of time within which to complete their work. On May 17, 1978, the drainage board agreed to an extension until June 23, 1979, subject to an agreement by United/Mancini to indemnify the drainage board against any damage claim or any claim for additional compensation by other contractors due to the delay caused by the fire and the extension of time.

On July 9, 1980, the first of two lawsuits (Case I) was filed by DiMambro against United/Mancini.

The complaint alleged that DiMambro had completed its work under the contract with the drainage board in November of 1977 but that DiMambro could not "connect up" and end the project because of the fire and resultant delay. The complaint sought "delay damages" including lost profits, increased labor costs, overhead costs and the like. The complaint alleged liability under the theories of negligence, tortious interference with DiMambro's contractual relationship with the drainage board, and a theory that DiMambro was a third-party beneficiary to the contract between the drainage board and United/Mancini, which contract United/Mancini breached.

United/Mancini had obtained insurance from several carriers to cover its risk of liability for a policy period beginning July 1, 1976, to August 1, 1977. The Hartford Insurance Company was the primary insurer. The Hartford insurance policy provided two types of coverage: comprehensive general liability coverage up to $100,000 and comprehensive contractual liability coverage with a different dollar limit. Canadian Universal Insurance Company wrote insurance in "following form" above the Hartford limits to a limit of $500,000. Admiral, providing the third layer of insurance coverage, also wrote insurance in "following form" for the excess of the Canadian coverage. These insurance carriers, through their agent, certified to the drainage board that they had written the general liability and contractual liability insurance coverages in accordance with the tunnel contract bidding documents.

Shortly after Case i was filed, United/Mancini impleaded Admiral as third-party defendant. In turn, Admiral impleaded Hartford and Canadian as fourth-party defendants. United/Mancini believed that Admiral should defend and indemnify

it in Case I. Admiral claimed that the policy limits of the other carriers had not yet been exhausted and that they should be held liable first in the event of a judgment. At the time Case I was filed, the general liability limits of both the Hartford and Canadian policies had been exhausted. The contractual liability limits of Hartford's policy were untouched, as were the limits of Admiral's policy.

On November 20, 1980, DiMambro filed Case II in the Wayne Circuit Court. The complaint alleged breach of contract against the drainage board. Thereafter the drainage board filed a third-party complaint against United/Mancini on an indemnity theory, relying upon the earlier agreement of United/Mancini to indemnify the drainage board in return for an extension of time.

United/Mancini then impleaded all three insurance carriers into Case II, claiming that one or all of them should defend and indemnify United/Mancini in Case II. DiMambro's complaint in Case II essentially sought extra compensation. It is undisputed that the failure of DiMambro to complete performance was not the fault of DiMambro, but was the direct result of the fire and the extension of time granted to United/Mancini by the drainage board.

On June 1, 1982, the circuit court consolidated the two lawsuits for trial. It divided the consolidated lawsuits into phases for purposes of trial. In phase one, the circuit court was to determine liability, i.e., whether DiMambro was entitled to delay damages and additional compensation. In phase two, the court was to decide the amount of damages sustained by the parties, and in phase three, the court was to decide the issue of insurance coverage, i.e., the duties of the three insurers.

Each phase was conducted as a bench trial before the Honorable Circuit Judge Richard C. Kaufman.

In phase one, the circuit court determined that the fire was the result of United/Mancini's negligence. Further, the circuit court determined that recovery was warranted on the negligence theory, on the third-party beneficiary theory, and on the theory that the drainage board breached its contract.

In phase two, the circuit court awarded money damages of $38,836.87 to DiMambro. The damage award reflected a ten percent increase in labor costs, increased costs for demobilization and remobilization of DiMambro's work force, overhead, profit, interest, labor costs and lost profits. The circuit court declined to award damages for the loss of the use of DiMambro's trucks during the delay. The circuit court's decision concerning liability and damages was reduced to judgment and entered on June 1, 1984.

United/Mancini subsequently filed a motion supplementary to judgment asking the circuit court to decide which insurance carrier was responsible for paying the judgment awarded to DiMambro. In an order of October 1, 1984, entitled "Declaratory Judgment re: Insurance Coverage," the circuit court decided that Admiral had no obligation to pay the judgment previously entered in DiMambro's favor and against United/Mancini.

After United/Mancini filed a motion for reconsideration, the circuit court issued its opinion and order which is challenged in this appeal.

The dispositive issue in this appeal concerns the circuit court's interpretation of the insurance policy issued by Admiral.

A policy of insurance is much the same as other contracts, that is, it is a matter of agreement by the parties, and the courts will determine what

the agreement was and enforce it accordingly. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Where the policy language is not ambiguous, the courts will accept the plain meaning of the written terms as the agreement of the parties. *Stine v Continental Casualty Co,* 419 Mich 89, 114; 349 NW2d 127 (1984). The courts will not rewrite the insurance policy to include a term to which the parties have not agreed. *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co,* 375 Mich 598; 134 NW2d 746 (1965); *Patek v Aetna Life Ins Co,* 362 Mich 292; 106 NW2d 828 (1961).

After reviewing the plain language of the insurance policy in light of the factual findings made by the circuit court, we conclude that the Admiral insurance policy covered the damages which United/Mancini became legally obligated to pay as a result of the fire. The insurance policy provides in pertinent part:

> The company will pay on behalf of the *insured* all sums which the *insured* . . . shall become legally obligated to pay as *damages* because of . . .
> *property damage*
> to which this insurance applies, caused by an *occurrence* . . . .

The insurance policy defines "property damage" as:

> *"property damage"* means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period . . . .

It is undisputed that the fire resulted in the physical injury to or destruction of tangible property, i.e., the tunnel and United/Mancini's equipment. The circuit court properly found as a matter of fact that damage to physical property occurred as a result of the fire.

The insurance policy defines an "occurrence" this way:

> "[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured* . . . .

It is undisputed that the fire was an accident which was neither expected nor intended by United/Mancini. As previously noted, the accident resulted in property damage. In *Western Casualty & Surety Group v Coloma Twp,* 140 Mich App 516, 523-524; 364 NW2d 367 (1985), in which the term "occurrence" was contained in an identical insurance coverage provision, the Court observed:

> The policy requires only that the alleged negligence of the insured be a cause of the bodily injury or property damage; there is no requirement that the alleged negligence be a direct cause or the sole cause of the injury or property damage.

The Court concluded that the alleged negligence, if proven, could have resulted in property damage sufficient to satisfy the policy definition of "occurrence." Likewise, in the case sub judice, the negligence of United/Mancini was the cause of the property damage. Thus, there was an "occurrence" as defined by the policy.

Turning to the coverage provision, we find that Admiral agreed to pay on behalf of United/Man-

cini all sums which United/Mancini became legally obligated to pay as damages because of property damage caused by an occurrence. Unlike the circuit court, we refuse to read into the plain language of the policy a requirement or condition that the tangible property, damaged by the occurrence, belong to the claimant, i.e., DiMambro. Such a condition is found nowhere in the policy.

The circuit court found support for its conclusion in the published trial court opinion of *County of Monroe v Travelers Ins Co,* 100 Misc 2d 417; 419 NYS2d 410 (1979), aff'd 429 NYS2d 336 (1980). That case is readily distinguishable on several grounds. First, the legal issue in that declaratory judgment action concerned the insurer's duty to defend the insured when the complaint of the principal plaintiff, filed in a separate liability action, made no mention of property damage. Second, the trial court read the liability policy, containing provisions identical to those at issue here, as requiring that the claimant sustain property damage, an interpretation consistent with a policy exclusion which was relevant on the facts of that case. In contrast, there is no need to read the policy coverage provision in light of a specific exclusion since none has been argued and we find none that applies here. Finally, that case has not been followed by federal courts applying New York law, but has been repeatedly distinguished, although not overruled. See *Aetna Casualty & Surety Co v General Time Corp,* 704 F2d 80, 83 (CA 2, 1983); *Lowenstein Dyes & Cosmetics, Inc v Aetna Life & Casualty Co,* 524 F Supp 574, 577 (ED NY, 1981).

In *Aetna Casualty & Surety Co, supra,* pp 83-84, the court reversed the decision of the district court in which it had eliminated lost profits as an item of damage in its interpretation of the policy term

"property damage." The Aetna insurance policy defined property damage as "injury to or destruction of tangible property (other than property owned by the named Insured) and all direct and consequential loss resulting therefrom." The court determined that lost profits, an intangible injury, was covered by the policy as a consequential loss. Although the policy language in this case is not identical, we believe that a similar result is warranted here.

United/Mancini next contends that exclusion (m), also referred to as the performance exclusion, should not have been used by the circuit court to bar the coverage of the loss of DiMambro's use of its trucks. From our reading of footnote 3 of the circuit court's opinion, we conclude that the circuit court did not squarely decide the issue. Instead, the circuit court responded to an estoppel argument, opining that even if Admiral were estopped from asserting the exclusion, United/Mancini would be in no better position since the damages fell outside that which is covered under property damage.

In light of our decision that the policy covers the delay damages awarded to DiMambro, we remand the case with directions to the court to determine whether exclusion (m) bars coverage for the loss of use of DiMambro's trucks.

In light of our disposition of the preceding issues, we do not consider the estoppel arguments raised by the parties.

Finally, we decide that Hartford was improperly compelled to be a party in this appeal. The issues raised in the appeal did not directly concern Hartford. Thus, we award taxable costs in favor of Hartford against Admiral.

Reversed in part and remanded for proceedings consistent with this opinion. Costs to Hartford, appellee, and to United/Mancini, appellant.