## Mattiola Construction Corp. v. Commercial Union Insurance Co.

*Travis L. Kreiser,* for plaintiff.
*Joseph P. Connor III,* for defendant.

HERRON, *J.,* March 8, 2002—Plaintiff Mattiola Construction Corp. has filed a motion for summary judgment on a portion of its claim for breach of contract. The motion presents the novel issue of whether a subcontractor's insurer must remit compensation for liquidated damages deducted from payments to the subcontractor and arising from damage caused by the subcontractor's tortious conduct. For the reasons set forth in this opinion, the court is granting the motion.

## BACKGROUND

Mattiola is a construction company whose operations center on saw-cutting concrete and asphalt materials in road and bridge construction. In 1999, Mattiola entered into a written subcontract with IA Construction Corporation whereby Mattiola agreed to perform certain concrete saw-cutting work on a bridge owned and operated by the Pennsylvania Turnpike Commission.[1] Motion ¶6.

---

1. IA Construction was responsible for the overall repair and reconstruction of the bridge, which is referred to as the "project."

On April 17, 2000, while performing this work, Mattiola employees accidentally cut certain structural steel members on the bridge, resulting in the stoppage of all work on the project.[2] *Id.* ¶11.

IA Construction demanded that Mattiola arrange for the repair of the damage resulting from the accident, and Mattiola did so. Motion ¶14-15. However, because of the accident, the project ultimately ran beyond the August 4, 2000 deadline agreed to by IA Construction and the commission, and the commission withheld construction engineering liquidated damages of $75,900 from its payments to IA Construction.[3] Motion exhibit B ¶¶7, 13; motion exhibit C ¶5-6. IA Construction, in turn, withheld an equal amount from its payments to Mattiola. Motion ¶33.

At the time of the accident, Mattiola was insured by a commercial general liability insurance policy provided by defendant Commercial Union Insurance Co. (CGU). Motion ¶12. When CGU refused to compensate Mattiola for the liquidated damages, Mattiola brought suit against CGU for breach of the policy,[4] breach of the contractual duty of good faith and bad faith. In the motion, Mattiola seeks summary judgment on its claim for breach of the

---

2. This event is referred to as the "accident."

3. The liquidated damages were calculated at a rate of $1,100 per day of delay over the 69-day delay period.

4. Mattiola's claim for breach of the policy has two components. The first is CGU's failure to compensate Mattiola for the liquidated damages and is addressed in this opinion. The second relates to CGU's increase of Mattiola's renewal premiums. Mattiola has not requested summary judgment on this second component.

policy arising from CGU's failure to reimburse it for the liquidated damages.[5]

## DISCUSSION

Pennsylvania Rule of Civil Procedure 1035.2 allows a court to enter summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action." A court must grant a motion for summary judgment when a non-moving party fails to "adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996).

CGU does not meaningfully contest the amount of the liquidated damages and has conceded that the liquidated damages "arose out of the damage done by plaintiff and the subsequent repairs." Motion exhibit C ¶5. See also, motion exhibit D ¶4 (acknowledging that "[a]s a result

---

5. Mattiola is also seeking prejudgment interest of six percent accruing from the date on which this action was initiated. Under Pennsylvania law, "in a contract action, the award of prejudgment interest is not a matter of discretion, but is a legal right." *Verner v. Shaffer,* 347 Pa. Super. 206, 211, 500 A.2d 479, 482 (1985) (citing *Gold & Co. v. Northeast Theatre Corp.,* 281 Pa. Super. 69, 421 A.2d 1151 (1980)). Such interest is proper because "the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party." *Somerset Community Hospital v. Allan B. Mitchell & Assocs. Inc.,* 454 Pa. Super. 188, 201, 685 A.2d 141, 148 (1996) (citing *Thomas H. Ross Inc. v. Seigfreid,* 405 Pa. Super. 558, 592 A.2d 1353 (1991)). Accordingly, a victory on its claim for breach of the policy entitles Mattiola to the prejudgment interest it seeks.

of the delay, plaintiff incurred $79,500 in liquidated damages occasioned solely by the delay").[6] Instead, CGU focuses on the particular language of the policy to argue that the liquidated damages are categorically excluded from coverage thereunder. Each of CGU's arguments is in essence based on the contention that the liquidated damages arise in contract, not in tort.

---

6. CGU makes a brief conclusory jab at the amount of the liquidated damages by stating that the liquidated damages amount to a penalty, but does not explain the foundation for this belief. In any event, to the extent that CGU relies on this argument, it is in error. To be permissible, a liquidated damages provision must both (1) address damages that are difficult or impossible to measure and (2) be a reasonable estimate of those damages. See *e.g., Holt's Cigar Co. v. 222 Liberty Assocs.,* 404 Pa. Super. 578, 588, 591 A.2d 743, 748 (1991); *Harris v. Dawson,* 239 Pa. Super. 316, 360 A.2d 706 (1976); *Kraft v. Michael,* 166 Pa. Super. 57, 70 A.2d 424 (1950). Lost profits, such as those that would logically result from the project delay, "are difficult to establish with mathematical certainty," *Scobell Inc. v. Schade,* 455 Pa. Super. 414, 421, 688 A.2d 715, 719 (1997), and Pennsylvania courts have repeatedly upheld liquidated damages awards arising from a project's delay in a construction contract context. See *e.g., Downingtown Area School District v. International Fidelity Insurance Co.,* 769 A.2d 560 (Pa. Commw. 2001). In addition, the fact that the amount varied with the length of the delay, combined with CGU's failure to produce any evidence of unreasonableness, allows the court to infer that the liquidated damages were a reasonable estimate of the damages caused by the delay in completing the project. Cf. *Keck v. Bieber,* 148 Pa. 645, 646, 24 A. 170 (1892) ("[W]here a lump sum is named by them, the court will always look into the question whether this is really liquidated damages or only a penalty, the presumption being that it is the latter."). Cf. *ZA Consulting L.L.C. v. Wittman,* April term, 2001, no. 3941, slip op. at 7 n.4 (C.P. Phila. January 9, 2002) (Herron, J.) (concluding that plaintiff was not entitled to presumption that non-lump sum liquidated damages provision was reasonable estimate of damages where the provision clearly bore no relation to damages incurred) (available at http://courts.phila.gov/cptcvcomp.htm).

Under the policy, CGU must pay Mattiola "those sums that [Mattiola] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" to which the policy applies. Motion exhibit F 1.A.1.a.[7] However, there are a number of coverage exclusions, including limitations on the term "property damage" itself, on contract-related damages, and on damages arising from Mattiola's failure to fulfill its contractual obligations. These restrictions will be addressed seriatim.

In reviewing the policy's coverage and exclusions, there are several axioms of insurance policy interpretation to keep in mind. Interpretation of an insurance policy is a matter of law to be decided by the court. *Curbee Ltd. v. Rhubart,* 406 Pa. Super. 505, 509, 594 A.2d 733, 735 (1991). Where a court finds an insurance policy provision ambiguous, "the provision is to be construed in favor of the insured and against the insurer." *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996). See also, *Bubis v. Prudential Property & Casualty Insurance Co.,* 718 A.2d 1270, 1273 (Pa. Super. 1998) ("[A]n ambiguity in an insurance contract should be read in favor of the insured.").[8] This can be attributed to the general principle that a contract must be construed against the drafter, as well as the fact that in-

---

7. The policy generally applies to property damage "that is caused by an 'occurrence'. . . ." Policy I.A.1.b(1). Both parties agree that the accident constituted an "occurrence." Motion ¶13.

8. A specific provision in an insurance policy "is [deemed] 'ambiguous' if reasonably intelligent people could differ as to its meaning." *Williams v. Nationwide Mutual Insurance Co.,* 750 A.2d 881, 885 (Pa. Super. 2000).

surance contracts generally are contracts of adhesion. *Rudolph v. Pennsylvania Blue Shield,* 553 Pa. 9, 17, 717 A.2d 508, 511 (1998). (citation omitted) In addition, this approach conforms to Pennsylvania's policy of interpreting insurance coverage clauses "broadly so as to afford the greatest possible protection to the insured." *Eichelberger v. Warner,* 290 Pa. Super. 269, 275, 434 A.2d 747, 750 (1981) (citing *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974), and *Penn-Air Inc. v. Indemnity Insurance Co. of North America,* 439 Pa. 511, 269 A.2d 19 (1970)). See also, *Butterfield v. Giuntoli,* 448 Pa. Super. 1, 14 n.8, 670 A.2d 646, 652 n.8 (1995) ("[I]f a policy is reasonably susceptible of two interpretations, it must be construed in the insured's favor so as not to defeat, unless clearly necessary, the claim to indemnity which the insured intended to obtain.").

## I. *The Term "Property Damage" Includes the Liquidated Damages*

CGU's first contention is related to the definition of "property damage." Under the policy, the term "property damage" is defined as follows:

"(a) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

"(b) loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." Motion exhibit F V.15.

According to CGU, the liquidated damages are not property damage and therefore are not covered by the policy. This argument fails to take into account the language of the policy, which extends coverage beyond property damage itself to damages incurred *because of* property damage. Clearly, the physical injury to the bridge resulting from the accident caused a substantial delay in the completion of the project. This delay can be considered a loss of use, and any resultant damages, including the liquidated damages, are attributable to the accident.

This interpretation of the policy finds support from commentators and courts alike. The Illinois Court of Appeals in *Gibraltar Casualty Co. v. Sergeant & Lundy*, 574 N.E.2d 664, 671 (Ill. App. Ct. 1991), considered whether an underlying lawsuit alleged property damage as defined by the insurance policy where the claims arose out of the insured's supposed shortcomings in the insured's design for an atomic power plant and its efforts to cover up these deficiencies. The *Gibraltar Casualty Co.* court held that alleged increased costs resulting from construction delays attributable to the design errors were sufficient to allege loss of use within the policy definition of property damage and that the insurer had a duty to defend the insured:

"*Loss of use* as distinguished from loss of profits *is the loss of the right to use property which is an incident of ownership.* Loss of use claims are not the same as claims for anticipated profits or loss of investment, and a party's description of loss of use damages as merely economic does not take them outside the coverage of an insurance policy that defines property damage as including loss of use." 574 N.E.2d at 671. (emphasis added)

Even in a liquidated damages context, courts have stuck to this broad interpretation of loss of use caused by property damage. In *Insurance Company of North America v. Aberdeen Insurance Services Inc.*, 253 F.3d 878 (5th Cir. 2001), for example, the court considered a commercial general liability insurance policy where the insured's negligence had resulted in the breach of an oil pipeline, delaying the insured's completion of its contract-based construction obligations. The court distinguished between CGL insurance cases where the insured was responsible for the physical injury and liquidated damages were covered, and those where the insured was not responsible and liquidated damages were not covered. 253 F.3d at 889. The court concluded that, because the insured was responsible for the pipeline break and the accompanying damage that caused the delay in the project's completion, the liquidated damages awarded against it were a direct consequence of its tortious conduct and were covered by the insurance policy. Commentators agree with the position espoused by the Fifth Circuit and the Illinois Appellate Court:

"The standard post-1973 CGL policy, which covers 'damages because of . . . property damage,' defines 'property damage' as: (1) the physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. '[T]he most sensible reading of the . . . phrase, 'damages because of . . . property damage,' re-

quires the insurer to pay all damages which are causally related to an item of 'property damage' which satisfies either of the policy's definitions.' *Federated Mutual Insurance Co. v. Concrete Units Inc.,* 363 N.W.2d 751, 757 (Minn. 1985).

"Thus, courts must initially determine whether consequential damages follow either a direct physical injury to tangible property, or a loss of use of tangible property . . . .

"[I]f either of the two prongs of the 'property damage' definition have been satisfied, consequential damages may constitute property damage. See *e.g., Westchester Fire Insurance Co. v. Bell Lumber & Pole Co.,* no. 86 C 8948 (N.D. Ill. October 23, 1991) (consequential damages were causally related to the railroad company's loss of use of its rail cars); *Central Armature Works Inc, v. American Motorists Ins.,* 520 F. Supp. 283, 289 (D.D.C. 1980) (lost profits stemming from loss of use of a shredder resulting from property damage inflicted by acts of the insured were covered by CGL policy); *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.,* 457 N.W.2d 175,182 (Minn. 1990) ('Damages which are causally related to covered "property damage" should also be covered under the language of the policy.'); *Federated Mut. Ins. Co. v. Concrete Units, supra,* 363 N.W.2d at 56-57 (the loss of use of a grain elevator resulted in consequential damages); *Marley Orchard Corp. v. Travelers Indem. Co.,* 50 Wash. App. 801, 750 P.2d 1294, 1297, *review denied,* 110 Wash. 2d 1037 (1988) (stress to trees constituted property damage and the resulting consequential damages were covered by the insured's CGL policy).

"A loss arising from 'property damage' is recoverable, whether or not the loss itself is tangible. See *e.g., Aetna Casualty & Surety Co. v. General Time Corp.,* 704 F.2d 80, 83 (2d Cir. 1983) (lost profits resulting from defective motors incorporated into zone valves); *Central Armature Works Inc. v. American Motorists Insurance Co.,* 520 F. Supp. at 289 (lost profits resulting from negligently repaired scrap metal shredder); *DiMambro-Northend Assocs. v. United Construction Inc.,* 154 Mich. App. 306, 310, 313-16, 397 N.W.2d 547, 548, 550-51 (1986), *appeal denied,* 428 Mich. 893 (1987) (lost profits, additional overhead and labor costs following fire in a tunnel under construction); *General Insurance Co. of Am. v. Gauger,* 13 Wash. App. 928, 538 P.2d 563, 566 (1975) (lost profits resulting from defective crop seed); *Safeco Insurance Co. v. Munroe,* 165 Mont. 185, 527 P.2d 64, 68-69 (1974) (lost profits following injury to a wheat crop)." Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes §7.03 (9th ed. 1998). See also, Jeffrey W. Stempel, Law of Insurance Contract Disputes 14-10 ("[W]here economic damage occurs as a fairly traceable consequence of tangible physical injury, property damage coverage is available.").

In short, Mattiola caused the accident and the resulting property damage. Accordingly, the liquidated damages arose because of property damage addressed by the policy and are covered by the policy, subject to any possible exclusions.

## II. *The Liquidated Damages Are Not Contractual Damages Excluded From the Policy*

The policy excludes property damage "for which the insured is obligated to pay damages by reason of the as-

sumption of liability in a contract or agreement," although it includes damages "[t]hat the insured would have in the absence of the contract or agreement" as an exception to the exclusion. Motion exhibit F I.A.2.b(1). CGU contends that two contractual provisions govern the deduction of the liquidated damages from amounts owed Mattiola and allow the invocation of this contract exclusion.

CGU first points out that the subcontract imposed liability on Mattiola for damages arising from a delay "by any fault or neglect or act or failure to act" of Mattiola, including liquidated damages. Subcontract ¶9. This, CGU contends, creates a contractual obligation, and Mattiola's responsibility for the liquidated damages thus arises in contract and is excluded from coverage. However, there does not appear to be any question that Mattiola would have been responsible and liable in some capacity for the accident even in the absence of the subcontract's provision, and the exception to the exclusion applies.

CGU's second objection goes to the form of the damages, *i.e.,* liquidated damages set in advance by a contract between IA Construction and the commission, and posits that the liquidated damages are a liability arising from a contract. This attempt to draw a line between the contractually determined liquidated damages and damages arising in tort from the accident is unpersuasive. CGU relies on a number of cases in which Pennsylvania courts held that a CGL policy did not cover damages for breach of contract. However, each of these cases is readily distinguishable from the instant case. In *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 685 A.2d 581 (1996), for ex-

ample, the Superior Court applied the "gist of the action" test to determine that the claims against the insured were essentially contract claims not covered by the policy.[9] Similarly, in *Toombs, NJ Inc. v. Aetna Casualty and Surety Co.,* 404 Pa. Super. 471, 591 A.2d 304 (1991), the Superior Court held that an insurer was not required to defend the insured against claims arising from the insured's alleged breach of an agreement to build and to operate two restaurants. See also *Snyder Heating Co. Inc. v. Pennsylvania Manufacturers' Association Insurance Co.,* 715 A.2d 483 (Pa. Super. 1998) (applying gist of the action test to find that claim for alleged breach of agreement to maintain burners and boilers sounded in contract and that insured was not entitled to coverage). Essentially, each of these cases held that the underlying claim was contract-based and that a CGL policy, which generally covers only tort claims, was not implicated.

In none of the cases cited by CGU was there any property damage underlying the economic damages claimed. In contrast, Mattiola's duty to remit damages, whether in the predetermined form of the liquidated damages or otherwise, stems more from its actions, the accident and

---

9. Pennsylvania has adopted the "gist of the action" doctrine, under which a plaintiff pursuing a tort action must show that "the wrong ascribed to the defendant must be the gist of the action with the contract being collateral." *Phico Insurance Co. v. Presbyterian Medical Services Corp.,* 444 Pa. Super. 221, 229, 663 A.2d 753, 756 (1995) (citing *Bash v. Bell Telephone Co.,* 411 Pa. Super. 347, 601 A.2d 825 (1992), and noting further that "the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.").

the damages caused thereby as from either its breach of the obligation to avoid negligent conduct, as discussed *supra,* or the liquidated damages provision. Under these circumstances, a gist of the action analysis makes it clear that any action brought against Mattiola based on the accident would sound in tort, not contract; simply because the amount of the liquidated damages is contractually determined does not mean that Mattiola's underlying liability and obligation to pay IA Construction the liquidated damages is contractual in nature. Accordingly, the cases cited by CGU are inapposite, and the liquidated damages are not excluded from the policy because of any contractual foundation they may have. Cf. *Imperial Cas. Indem. Co. v. High Concrete Structures Inc.,* 858 F.2d 128, 136 (3d Cir. 1988) (interpreting CGL policy to find that "if there is property damage, then there is coverage for any loss of use the damage caused.").

### III. *Exclusion M Does Not Bar Mattiola from Recovering*

Finally, CGU asserts that provision I.A.2.m. of the policy (exclusion M) excludes coverage of the type of damages Mattiola incurred. Exclusion M excludes coverage for property damage to "impaired property" arising out of "[a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." "Impaired property," in turn, is defined as follows:

"(7) 'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used because: . . .

"(b) You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

"(1) The repair, replacement or removal of 'your product' or 'your work'; or

"(2) Your fulfilling the terms of the contract or agreement." Motion exhibit F V.7.

CGU asserts that, because the accident came about because of Mattiola's negligence, which constitutes a breach of the subcontract, exclusion M precludes recovery of the liquidated damages.

In attempting to invoke exclusion M, CGU presents nothing more than old wine in new bottles. As stated *supra,* Mattiola's liability in relation to the accident sounds in tort, not contract, and any duties that Mattiola may have violated are less contractual in nature and more tort-related. Cf. *Standard Fire Insurance Co. v. Chester-O'Donley Associates Inc.,* 972 S.W.2d 1, 12 (Tenn. Ct. App. 1998) (holding that impaired property provision could be invoked and liquidated damages barred "when there has been no physical injury to tangible property other than the insured's work"). Accordingly, exclusion M does not apply, and the policy covers the liquidated damages.

## CONCLUSION

Because Mattiola is entitled to coverage of the liquidated damages under the policy, it is also entitled to summary judgment on its claim for breach of the policy arising from CGU's failure to pay the liquidated damages.

## ORDER

And now, March 8, 2002, upon consideration of plaintiff Mattiola Construction Corp.'s motion for summary judgment and defendant Commercial Union Insurance Co.'s response thereto, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the motion is granted. Summary judgment in the amount of $75,000 together with prejudgment and post-judgment interest at the rate of 6 percent per annum, said interest to run from April 10, 2001 to the date said sum is paid to the plaintiff, is hereby entered in favor of the plaintiff on the component of Count I—breach of insurance contract stemming from the defendant's failure to compensate the plaintiff for the liquidated damages.