**DOW CHEMICAL COMPANY,**
**Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE**
**CO., et al., Defendants**

No. 96–75832.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 28, 2002.

Harold J. Blanchet, Jr., Braun, Kendrick, Saginaw, MI, Eugene Driker, Stephan E. Glazek, Barris, Sott, Detroit, MI, Steven R. Gilford, Mayer, Brown, Chicago, IL, Gregory E. Smith, Midland, MI, Mary C. Calkins, Howrey, Simon, Los Angeles, CA, for Plaintiff.

Ronald W. Rice, Rice, Galin, Southfield, MI, Charles S. Bergen, Irving C. Faber, Kelly C. Wilson, Grippo & Elden, Chicago, IL, Kenneth C. Newa, Plunkett & Cooney, Detroit, MI, Charles W. Browning, Plunkett & Cooney, Bloomfield Hills, MI, Alison L. Thorburn, Detroit, MI, Bruce N. Moss, Howard & Howard, Bloomfield Hills, MI, Margaret J. Orbon, Clausen Miller, Chicago, IL, Julie L. Kosovec, Hymam Lippitt, Birmingham, MI, Christine H. Stephens, Secrest, Wardle, Farmington Hills, MI, Robert G. Kamenec, Plunkett & Cooney, Detroit, MI, Michael E. Thoits, Kemp,

Klein, Troy, MI, Arthur F. Brandt, Bollinger, Ruberry, Chicago, IL, John B. Haarlow, Leisa J. Hamm, Lord, Bissell, Chicago, IL, Paul W. Kalish, Crowell & Moring, Washington, DC, S. Thomas Wienner, Seth D. Gould, Feeney, Kellett, Bloomfield Hills, MI, Michael E. Thoits, Kemp, Klein, Troy, MI, for Defendants.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT [1]

TARNOW, District Judge.

### I. Introduction

This case arises from an insurance dispute between Dow Chemical Company and a number of insurers, led by the primary insurance company Fireman's Fund Insurance ("Fireman's Fund"). In the 1950's and the following two decades, Dow produced pesticides 1, 2, Diobromo—3 chloropropane ("DBCP") and ethylene diobromide ("EDB")(collectively "the pesticides"). In the late 1970's and 1980's, California restricted the amount of DBCP and EDB that could be in drinking water due to potentially damaging effects the pesticide had on male fertility. As a result, various California municipalities incurred costs associated with filtering DBCP and EDB from drinking water and sued Dow. Dow settled the municipalities' lawsuits. Presently before the Court is Dow's dispute with Firemen's Fund and other excess insurers as to whether or not the insurance companies were liable: that is, was the policy triggered by events during the period of coverage.

Fireman's Fund advances three arguments: 1) the insurance was never triggered because the actual injury giving rise to the underlying suits occurred after the Fireman's Fund policies ended; 2) the insurance was not triggered because the underlying claimants sought relief for post-coverage injuries; and 3) Fireman's Fund owed no damages under Michigan allocation principles.

Dow contends that the damage to the groundwater during the policy period triggered coverage pursuant to the unambiguous policy language. Dow's position is correct. However, there remains questions of fact to be determined by the jury. Firemen's Fund's motion for partial summary judgment [678–1] and Dow's motion for partial summary judgment [691–1] are DENIED.

### II. Factual Background

In the 1950's, Dow manufactured and sold DBCP and EDB as a pesticide for use on crops nationwide, including California. Over the years, farmers applied the pesticides to their crops. In the early 1970's, studies were released linking DBCP to cancer in laboratory animals. In 1977, DBCP was linked to findings of male infertility in workers involved in the manufacturing process. Dow ceased production that year. Shortly thereafter, federal regulators suspended the registration of DBCP for most uses.

In 1979 and the early 1980's, the pesticides were detected in groundwater in the San Joaquin Valley, California. When DBCP and EDB were detected in municipal water systems, state authorities began regulating the pesticides' presence in drinking water. Initially, action levels were established by the state advising against use of drinking water contaminated by DBCP in excess of 1.0 part per billion ("ppb"). Although not a requirement, the action levels advanced by the state were meant to influence municipalities whose water systems contained DBCP concentrations over the Action Level to reduce those concentrations to less than

---

1. Law Clerk Carlos Bermudez provided quality research assistance.

1.0 ppb. This terminology was replaced and the restrictions heightened in 1988 and 1989, when the State adopted maximum contaminant levels ("MCL") which prohibited use of drinking water contaminated by DBCP and EDB present in even lower levels. The M.C.L. § established the first mandatory limits on DBCP and EDB in California drinking water. The MCL's limited the presence of DBCP to .2 ppb and EDB was limited to .05 ppb. The new restrictions forced a number of municipalities that supplied drinking water to the public to install filtration equipment.

The contamination of groundwater and the subsequent restrictions on the use of that water for drinking purposes led to lawsuits filed by the municipalities against Dow in 1981, 1990, 1992 and 1993. The municipalities did not own the groundwater, but had rights to appropriate the water. The lawsuits postulated that this right, known as a usufructuary interest, was breached by Dow's production and sale of DBCP and EDB. Thus, the municipalities' lawsuits sought to recover costs that they incurred to protect their usufructuary interests. This is described in one of the complaints as damages suffered as a result of "repairs to, modifications of and closure of certain of their water systems." The suits filed after 1989 argued that their claims included only damage resulting from the enactment of the MCL's in 1988 and 1989. Still other cases recognized that the underlying basis of their claim arose from the damage to the groundwater caused by application of the pesticides over many years. These cases settled, beginning in 1986 and continuing through the 1990's, for lump sums, often based directly on the costs of filtration systems and costs suffered attempting to remedy the contaminated water.

Fireman's Fund provided Dow with primary comprehensive general liability coverage from 1956 to April 1, 1976. This coverage was provided under a series of six policies. The policies that apply from 1956 –1970 used the same language in the trigger of coverage clause. The 1956–70 policies obligate Fireman's Fund:

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law, or assumed by the insured under contract or agreement for damages because of injury to or destruction of property including the loss of use thereof.

These policies "apply to 'occurrences and accidents which take place during the policy period.'" Occurrence is defined "to include a single occurrence or a single accident, or a series of them arising out of one event or disaster."

The 1970–76 trigger language remained similar to the earlier contract, obligating Fireman's Fund to:

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence....

However, unlike the earlier policies, the later policies apply "... only to ... property damage which occurs during the policy period." Occurrence is defined as an event that "results, during the policy period, in ...property damage." The 1970 policy defines property damage as "injury to or destruction of tangible property." The 1974 policy further defines property damage as either:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of

use is caused by an occurrence during the policy period.

Fireman's Fund paid for Dow's legal defense of these suits but reserved the right to refuse to cover the settlement. Dow and the insurance companies now dispute whether or not the settlements triggered insurance coverage.

## III. Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. F.R. Civ. P 56(c). According to the court in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989), the moving party must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. *Bradford* at 1479 citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are determined by the substantive law in the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) at 247. The Sixth Circuit went on to state in *Bradford* that the moving party may meet its burden by demonstrating to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. *Bradford* at 1479

The non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. Where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All inferences must be made in a light most favor-able to the non-moving party. *Matsushita* at 586, 106 S.Ct. 1348.

## IV. Discussion

Both Dow and Fireman's Fund filed motions for partial summary judgment. The same issues recur in their responses to each other's motions, as well as their separate motions. The excess insurers also responded to Dow's motion for partial summary judgment. Their primary argument is that these policies are not triggered until the coverage maximum of the primary insurer has been exhausted. So their argument is integrally connected to Fireman's Fund's motions and is treated accordingly. Fireman's Fund contends that Dow should not recover because: 1) the injury-in-fact occurred post-policy so as not to trigger coverage; 2) the scope of the underlying claims restricted trigger until post-coverage; and 3) Michigan allocation laws prohibit recovery.

*Injury–In–Fact Requirement for Insurance Coverage*

■ Fireman's Fund argues that summary judgment should be granted in it's favor based on Michigan and other case law which adopted the "injury-in-fact" approach to determining insurance coverage. The injury-in-fact approach was adopted by the Michigan Supreme Court in *Gelman Sciences, Inc. v. Fidelity and Casualty Co. of NY,* 456 Mich. 305, 319, 572 N.W.2d 617 (1998). The *Gelman* injury-in-fact approach dictates that "actual injury must occur during the time the policy is in effect in order to be indemnifiable." *Gelman Sciences, Inc. v. Fidelity and Casualty Co. of NY,* 456 Mich. 305, 319, 572 N.W.2d 617 (1998). According to Fireman's Fund, Dow is unable to prove that actual injury occurred during the policy period. At most, they could demonstrate exposure, which is insufficient. This same injury-in-fact standard was adopted by a

Michigan federal district court, in *Dow Chemical Co. v. Associated Indem. Corp.*, 724 F.Supp. 474 (E.D.Mich.1989)("*Sarabond*" trigger decision), analyzing the insurance policy currently in dispute. This injury-in-fact standard prohibits Dow from recovering in this case, according to Fireman's Fund.

■ Fireman's Fund characterizes the actual damage at issue as damage to the municipalities' right to appropriate groundwater. Under California law, groundwater belongs to the people of the state. CA WATER § 102. Operator's of public water systems, thus, have no property rights in the groundwater *per se* but a right to appropriate the water. These appropriative rights entitle the municipality to withdraw only the amount of water it can put to a reasonable and beneficial use without using the entire safe yield of the aquifer. *Corona Foothill Lemon Co. v. Lillibridge*, 8 Cal.2d 522, 66 P.2d 443 (1937). Fireman's Fund contends that because the municipalities only had standing to sue for material impairment of their own use of water, they were not damaged until that use was impaired. Their right to appropriate, then, was not affected until 1979 when the first California regulation limiting DBCP and EDB was effectuated, or later, when the more restrictive measures were in place. Fireman's Fund contends that it is significant that these municipalities did not sue when they first learned that DBCP and EDB were present in the water systems. The municipalities waited until they incurred costs from filtering the pesticides. This, Fireman's Fund argues, indicates that the municipalities suffered no actual injury until 1979 or later. The only possible injury is forward-looking protection of future groundwater appropriation. In a sense, the actual damage, according to Fireman's Fund, was the California regulation restricting permissible levels of DBCP and EDB in drinking water. Because the Fireman's Fund Insurance policy expired in 1976, the actual damage created by the regulations occurred outside of the policy terms. Applying the injury-in-fact model, Fireman's Fund contends that this injury never triggered coverage.

In response, Dow advances a trigger of coverage theory based in the insurance contracts. Dow contends that the 1956 – 1970 policies state unambiguously that they are triggered by a causative event during the policy period. In this case, the causative event is the emission of DBCP and EDB into the groundwater and the resultant liability. Dow contends that a simple reading of the 1956–1970 policies indicate that the insurance was triggered in this case. The 1956–70 policies obligate Fireman's Fund:

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law, or assumed by the insured under contract or agreement for damages because of injury to or destruction of property including the loss of use thereof.

These policies apply to occurrences and accidents which take place during the policy period. An occurrence "include[s] a single occurrence or a single accident, or a series of them arising out of one event or disaster." This policy requires an occurrence during the policy, but it does not specify whether the resulting property damage or liability must take place during the policy period in order to trigger coverage. Dow contends that under Sixth Circuit case law, unless a policy specifies otherwise, both the causal event and the property damage can be the occurrence during the policy period on which coverage is based. See *Michigan Chemical Corp. v. American Home Assurance Co.*, 728 F.2d

374, 381 (6th Cir.1984); see also *Babcock & Wilcox Co. v. Arkwright–Boston Mfg. Mut. Ins. Co.,* 53 F.3d 762 (6th Cir.1995), *cert denied* 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996)(holding that the term occurrence was defined to mean "any happening or series of happenings, arising out of or due to one event taking place during the term of this contract..."). Dow reasons that because Michigan law is permissive and the 1956–70 policies do not state otherwise, the triggering event that must occur to trigger coverage during the policy period is either the causal event or the underlying property damage. The causal event in this case was the large scale contamination of groundwater with the pesticides. Farms in the outlying areas used DBCP and EDB extensively on their crops leading to infection of the groundwater throughout the term of the policy. Dow reasons that because the relevant occurrence is the contamination of groundwater and that contamination occurred during the policy period, the insurance was triggered, despite the fact that the policy expired prior to the adoption of the California regulations.

Next, Dow contends that all of the Fireman's Fund policies are triggered by property damage during the policy period, including the 1970 –76 policies, regardless of when and to whom liability later arises. Dow recognizes that the 1970 –76 policies require property damage during the policy period. Under these policies, Fireman's Fund is obligated to:

> [p]ay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ...property damage to which this insurance applies, caused by an occurrence.

Dow reasons that this coverage clause requires only that there be property damage that gives rise to damages for which Dow is legally liable. While the property dam-

age must occur during the policy according to the contract language, there is no such temporal restriction as to liability. In this case, as long as the contamination to the groundwater occurred during the policy period, later liability is covered.

The leading Michigan case on the issue of trigger of insurance coverage, *Gelman v. Fidelity and Casualty Company of New York,* 456 Mich. 305, 572 N.W.2d 617 (1998), is consistent with Dow's interpretation of the insurance contract. *Gelman* involved a dispute over coverage for environmental damage caused by seepage from a wastewater pond. The damage that resulted from the seepage did not manifest itself until after the insurance policy terminated. The lower court denied coverage reasoning that because the injury did not manifest itself until after the insurance policy ran, coverage was not triggered. The Supreme Court overruled the lower court dismissing the manifestation trigger theory that the lower court relied upon. The *Gelman* Court held that standard comprehensive general liability (CGL) policy language, providing coverage for property damage occurring during the policy period, dictates an injury-in-fact trigger of coverage. The Supreme Court remanded the *Gelman* case to the lower court for a determination as to whether the injury-in-fact—the contamination—occurred during the policy period.

The *Gelman* Court outlined a number of different approaches to insurance trigger issues. The court recognized that four different theories for determining what event or events trigger coverage under a standard comprehensive general liability insurance exist: 1) exposure trigger (the earliest possible); 2) the manifestation theory (the latest possible trigger); 3) continuous trigger theory; and 4) the injury-in-fact theory. While the court recognized that these distinctions are of limited ana-

lytical use, it adopted the injury-in-fact approach because it was the most accurate and sensible. *See Gelman*, 456 Mich. at 316, 572 N.W.2d 617.

The court explained each trigger theory. The exposure trigger activates coverage the moment that exposure to an injury causing condition occurred. Fireman's Fund characterizes Dow's theory to be premised on the exposure theory. The manifestation theory activates coverage when the injury manifests itself. This theory could prove too restrictive, the court reasoned, because a party that was injured during the policy period, but was not made aware of the injury until after, could be excluded from coverage. The court preferred the injury-in-fact rule because it triggers insurance coverage when there is actual property damage. The finder of fact must determine when exposure to the pollutants resulted in actual property damage. *Gelman*, 456 Mich. at 313, 572 N.W.2d 617.

Under *Gelman*, the insurance contracts are the most compelling aspect of insurance trigger analysis. As the *Gelman* Court stated:

> While the various trigger theories are useful to describe the outcomes reached by courts in different factual settings, we think that reference to trigger theories can be deceiving. Ultimately, it is the policy language as applied to the specific facts in a given case that determines coverage.

*Gelman*, 456 Mich. at 316, 572 N.W.2d 617.

 Because the policy is essentially a contract, the court must initially determine if it is clear and unambiguous on its face. *Gelman*, 456 Mich. at 317, 572 N.W.2d 617. Ambiguity should not be created where none exists. If there is no ambiguity, the court must "enforce the terms of the contract as written, interpreting the unambiguous language in its plain

and easily understood sense." *Gelman* 456 Mich. at 317, 572 N.W.2d 617(citations omitted). Where the policyholder's interpretation in favor of coverage is reasonable, that reasonable expectation must be enforced. *Gelman*, 456 Mich. At 318.

 In the present case, the insurance contract is unambiguous and the policy holder's interpretation in favor of coverage is reasonable. The policy states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage to which this insurance applies, caused by an occurrence.

Occurrence is defined by the policy as:

> [A]n event, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage not intended from the standpoint of the insured.

Dow claimed that groundwater infected by a chemical that has been shown to have adverse effects on men's fertility, as well as other negative effects, is property damage which triggers coverage. This is a reasonable interpretation. Infusion of dangerous chemicals into groundwater reasonably constitutes injury to that water. This is property damage under the policy. Under the policy, property damage is defined as an "injury to or destruction of tangible property." Dow became legally obligated to pay the municipalities because of this property damage. Thus, pursuant to the unambiguous contract, and consistent with the injury-in-fact requirement, the insurance is triggered if Dow can show at trial that the groundwater was tangibly injured by DBCP and EDP and this injury gave rise to liability. Thus, the issues of disputed facts for trial are: 1) whether DBCP and EDP were injurious to water, independent of the California regulation;

and 2) whether the groundwater was contaminated by an injurious level of the chemicals during the policy period.

*Scope of the Underlying Claim*

█ Next, Fireman's Fund contends that theories of coverage must mirror the theory of liability. The Sixth Circuit noted in *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 690 n. 20 (6th Cir.2000)(quotations omitted):

> theories of coverage and allocation should 'parallel the theory of liability' in order to assure that neither the insurer nor the insured may have their proverbial cake and eat it too.

*Id.*

Based on this principle, Fireman's Fund argues that courts consistently deny coverage when the damage that produced the liability in the underlying case occurred after the policy expired. The underlying lawsuits define the scope of coverage. *Buena Vista Mines, Inc. v. Industrial Indem. Co.*, 87 Cal.App.4th 482, 104 Cal. Rptr.2d 557 (2001). In this case, Fireman's Fund argues, the scope of the underlying lawsuits were limited to prospective compliance costs arising from post-coverage regulations. Fireman's concludes that this prospective damage does not trigger coverage.

Dow reasons that the coverage is not limited by the scope of the underlying claim neither by the terms of the insurance contract, nor by Michigan law. In *Dimambro–Northend Associates v. United Construction, Inc.*, 154 Mich.App. 306, 397 N.W.2d 547 (1986), the insured was a tunnel construction contractor that caused damage to a tunnel on which it was working. The damage caused delay which led to another contractor, the underlying claimant, to suffer economic losses. The other contractor suffered no damage to its own property. The insurer attempted to deny coverage because the underlying claimant had not suffered property damage, the Michigan Court of Appeals stated:

> We find that [the insurer] agreed to pay on behalf of [the insured] all sums which [the insured] became legally obligated to pay as damages because of property damage caused by an occurrence. Unlike the circuit court, we refuse to read into the plain language of the policy a requirement or condition that the tangible property, damaged by the occurrence belong to the claimant, i.e. DiMambro. Such a condition is found nowhere in the policy.

*Dimambro*, 154 Mich.App. at 315, 397 N.W.2d 547.

Dow reasons that unless the policy provides an explicit condition, the underlying damage does not have to belong to the claimant. Based on *Dimambro* and a clear reading of the policies, Dow contends that the property damage to the groundwater triggered the insurance, despite the fact that the liability was based on damages that accrued after the policy expired.

As stated, *supra*, trigger of coverage analysis in Michigan focuses on the insurance contract language. The unambiguous language in this contract does not limit the trigger of coverage to the injury in the underlying claim. The contract language is triggered by property damage that occurs during the policy period, even if liability arises post-coverage. It is sufficient that the contamination of the groundwater occurred during the policy period. There is no policy language limiting the triggering damage to the scope of the underlying claim. Further, as Dow argues, Michigan courts have enforced insurance coverage when the initial damage is caused to a third parties' property. *See Dimambro*, 154 Mich.App. at 315, 397 N.W.2d 547.

Fireman's Fund contends that a district court interpreting this same policy lan-

guage determined that the damage must arise from the underlying claim. *See Dow Chemical Co. v. Associated Indem. Corp.*, 724 F.Supp. 474 (E.D.Mich.1989)("Sarabond case").[2] However, this particular question was not posed in the Sarabond case. The Sarabond Court was faced with trigger of coverage issues arising from Dow settling cases involving a mortar additive that tended to corrode over time, manifesting in injury to buildings constructed using the product. Not all buildings built with Sarabond resulted in property damage. Of those that did, some did not manifest the damage until long after the policy period. The court held that property damage arising from the underlying claim had to have happened during the policy. The court gave no support for its finding that the trigger damage must arise from the underlying claim. However, that question did not call for any discussion because the damage of the underlying claim was exactly what was at issue. The Court simply determined that the parties must show that the corrosion took place during the policy. In this case, unlike in the Sarabond case, actual property damage may have taken place during the policy period that later gave rise to liability to another party. The Sarabond case is distinguishable on that basis.

Even if the Court were to apply Fireman's Fund's suggested approach, the scope of at least some of the underlying cases include activity and damage that occurred during the policy period. The City of Clovis alleged Dow participated in a conspiracy as early as May 27, 1958 to conceal the dangers of the pesticides. These dangers include the pesticides' capacity to contaminate groundwater. Recovery was sought based on this conspiracy and the resultant property damage to the appropriation rights which were interfered with by contamination of groundwater.

This Court finds that the unambiguous language of the contract dictates that coverage is triggered by property damage that occurs within the policy period that gives rise to liability, even if outside of the policy period. The contract does not require that the injured tangible property belong to the municipalities. The Court will not read such a requirement into the unambiguous contract. Even if the Court were to adopt Fireman's Fund's recommended approach, the triggering damage was the contamination of the wells, which would present a triable issue of fact.

*Michigan Allocation Law*

Finally, Fireman's Fund contends that even if the presence of DBCP and EDB in the groundwater triggered the policy, it owes no damages under Michigan Allocation principles. Under *Arco Industries Corp. v. American Motorists Insurance Co.*, 232 Mich.App. 146, 594 N.W.2d 61 (1998)("*Arco III*"), indemnity coverage must be allocated to the policy period in which the indemnified damage took place. Because the damage took place after the policy expired, Fireman's Fund contends summary judgment should be entered in their favor.

The *Arco III* Court adopted the time-on-the-risk method of apportionment. This method apportions remediation costs among successive insurers for continuous property damage to which injury-in-fact trigger of coverage has been applied. In that case, the comprehensive general liability insurer was required to provide coverage for damage sustained during its poli-

2. This case is referred to as the "Sarabond case," because the chemical adhesive product at issue was named Sarabond.

cy periods, but not for years outside of its policy period. *See Arco III*, 232 Mich.App. 146, 165–66, 594 N.W.2d 61. Fireman's Fund's argument fails because it is premised on the actual injury being the California regulation. Fireman's Fund reasons that because the regulation occurred outside of the policy period, the remediation costs should be allocated to the insurer at that time. As is discussed at length above, this presumption is incorrect. The triggering injury is the injury to the groundwater. Thus, Fireman's Fund's "time-on-the-risk" refers to the time that contamination was occurring during the policy period. Because there is an outstanding motion concerning the pollution exclusion clause of the contract, a determination of Fireman's Fund time-on-the-risk would be premature at this stage in the proceedings, because the pollution exclusion could exclude six years from Fireman's Funds' time-on-the-risk.

*Excess Insurers*

The excess policies cannot be triggered until all underlying policies have been exhausted. Thus, because Fireman's Fund is the primary insurance and its liability is still in dispute, the excess insurers share the same status.

## V. Conclusion

In consideration of all relevant materials and pleadings and for the reasons stated above,

IT IS ORDERED that defendant AIU Insurance Company, et al.'s, motion to extend cut-off for joinder of fireman fund's motions for summary judgment [660–1] is GRANTED;

IT IS FURTHER ORDERED that Defendant Fireman's Fund's motion for partial summary judgment on trigger of coverage [667–1] is DENIED;

IT IS ORDERED that Dow Chemical Company's motion for partial summary judgment on trigger [691–1] is DENIED